UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

MOHAMMAD A. MIAN,

    Plaintiff,

v.

GENERAL MANAGER, BALTIMORE-
WASHINGTON MANHEIM AUCTION,

    Defendant.

Civil Action No. TDC-14-2534

**MEMORANDUM OPINION**

This matter is before the Court on a Motion to Dismiss, ECF No. 9, filed by Defendant Manheim Remarketing, Inc. d/b/a/ Manheim Baltimore-Washington ("Manheim").[1] The issue before the Court is whether the Complaint filed by Plaintiff Mohammad A. Mian ("Mian") sufficiently states a cause of action upon which relief may be granted. The Court has reviewed the Complaint and briefs and has determined that no hearing is warranted. *See* Local Rule 105.6 (D. Md. 2014). For the following reasons, the Motion is GRANTED.

**BACKGROUND**

The instant *pro se* civil action was filed on August 11, 2014 by Mian, the former owner and operator of Mid-Atlantic Automotive Supply Company ("Mid-Atlantic"), a wholesale used car dealership in Silver Spring, Maryland. While Mian was the owner of Mid-Atlantic, he sold his cars at Manheim's weekly car auction in Baltimore. Mian alleges that for "[y]ears before,"

---

[1] The Complaint names "General Manager, Baltimore-Washington Manheim Auction" as the defendant. Manheim Baltimore-Washington is owned by Manheim Remarketing, Inc., which reserves its rights with respect to deficiencies both in the pleadings and in service of process, but has filed the present Motion to Dismiss and consented to a ruling on the merits of the sufficiency of the Complaint as pleaded.

Manheim ran its auctions on a "first come first serve system," meaning that as soon as a car entered Manheim's main gates, it was entered into the computer system and placed automatically in the row and run number generated by the computer, but that at some point, Manheim began to assign the row and run numbers manually. Compl. ¶ 5, ECF No. 1. Mian alleges that this new system was unfair and discriminatory, because, as was common knowledge to the dealers, those cars with the earliest assignments tended to sell quickly and for competitive prices, while those cars with later assignments did not. Mian alleges that he filed complaints with Manheim's General Manager on August 8, 2012 and January 18, 2013, but that he eventually lost his business in February 2013.

Mian also alleges that, in response to his complaints, Manheim explained that "placement of cars in the auction lanes on quantity basis was their privilege," and that they had put his cars at the end of the auction because of his relatively small inventory. *Id.* ¶ 11. Mian alleges that these practices are in violation of federal and state laws against unfair or deceptive trade practices. Specifically, the Complaint states: "The applicable law here is 7 U.S. Code Section 213 which provides 'Prevention of unfair, discriminatory, or deceptive practice.'" *Id.* ¶ 13. It also references the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law §§ 13-301–501 (West 2014), and the Maryland Antitrust Act ("MAA"), Md. Code Ann., Com. Law §§ 11-201–213.

On October 2, 2014, Manheim filed its Motion to Dismiss Pursuant to Rules 12(b)(6) and 12(b)(5). In response, on October 22, 2014, Mian filed a "Motion to Strike Defendant's Motion with his Memorandum of Law" (hereinafter "Opp. Mot. Dismiss"), in which he both requested that the Court strike Manheim's Motion to Dismiss and made substantive arguments refuting Manheim's contention that the Complaint failed to state a claim. The Court treats Mian's filing

as both a Motion to Strike and a Memorandum in Opposition to the Motion to Dismiss. Both the Motion to Dismiss and the Motion to Strike have been fully briefed and are ripe for adjudication.

## DISCUSSION

### I. Plaintiff's Motion to Strike

The Court first addresses Mian's Motion to Strike the Motion to Dismiss. Under Federal Rule of Civil Procedure 12(f), the court "may strike from a pleading any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). In this case, the Motion to Dismiss is neither a pleading, *see Thomas v. Bet Sound-Stage Rest./Brett Co, Inc.*, 61 F. Supp. 2d. 448, 458 (D. Md. 1999) ("As motions to dismiss are not pleadings, Plaintiff's motions to strike are inappropriate."), nor is it redundant, immaterial, impertinent, or scandalous in its content. Mian argues that the Court should strike the Motion because Manheim did not answer the Complaint, as required by Federal Rule of Civil Procedure 8(b)(1)(B), and "instead, adopted an irregular way in the answer to mislead the Court with redundant and impertinent material." Opp. Mot. Dismiss at 2. Mian is correct that Manheim's Motion to Dismiss is not an answer under Rule 8(b)(1)(B). However, under Federal Rule of Civil Procedure 12(b), a defendant is permitted, before filing its answer, to assert various defenses by motion, including a motion to dismiss for failure to state a claim upon which relief can be granted, Fed. R. Civ. P. 12(b)(6). Manheim's Motion to Dismiss is properly filed, and its content is not redundant, immaterial, impertinent, or scandalous. *See Schultz v. Braga*, 290 F. Supp. 2d 637, 654-55 (D. Md. 2003) (explaining that motions to strike "should be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties") (citation and internal quotation marks omitted)). Thus, Mian's Motion to Strike is denied.

## II. Defendant's Motion to Dismiss

In its Motion to Dismiss, Manheim argues that the Complaint should be dismissed under both Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and under Rule 12(b)(5) for insufficient service of process. Although Mian does not number his causes of action, the Complaint invokes three statutes: 7 U.S.C. § 213, the MCPA, and the MAA. The Court addresses each in turn and concludes that Mian does not state a cause of action under any of the three. Because the Court dismisses the Complaint with prejudice for failure to state a claim, the Court does not reach the question whether service was insufficient in this case.

### A. Legal Standard

In order to defeat a Federal Rule of Civil Procedure 12(b)(6) motion, a complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when "the plaintiff pleads *factual content* that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (emphasis added). In assessing whether this standard has been met, the Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005). However, legal conclusions or conclusory statements do not suffice and are not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 678. Notably, "a document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted).

B.  7 U.S.C. § 213

In the Complaint, Mian pleads that "[t]he applicable law here is 7 U.S. Code Section 213 which provides 'Prevention of unfair, discriminatory, or deceptive practice.'" Compl. ¶ 13. However, 7 U.S.C. § 213 is a subsection of the Packers and Stockyards Act of 1921, 7 U.S.C. §§ 181–231 (2012), and applies only to persons engaged in the business of conducting or operating a livestock stockyard. The text of § 213 states:

> It shall be unlawful for any stockyard owner, market agency, or dealer to engage in or use any unfair, unjustly discriminatory, or deceptive practice or device in connection with determining whether persons should be authorized to operate at the stockyards, or with the receiving, marketing, buying, or selling on a commission basis or otherwise, feeding, watering, holding, delivery, shipment, weighing, or handling of livestock.

7 U.S.C. § 213. The definition of a stockyard under the statute is "any place, establishment, or facility" that is "conducted, operated, or managed" as a "public market for livestock producers, feeders, market agencies, and buyers, consisting of pens, or other inclosures, and their appurtenances, in which live cattle, sheep, swine, horses, mules, or goats are received, held, or kept for sale or shipment in commerce." Id. § 202. Because, as the Complaint alleges, Manheim is engaged in the sale of cars, not livestock, any claim under 7 U.S.C. § 213 is dismissed with prejudice.

C.  The Maryland Consumer Protection Act

Mian also alleges that Manheim violated the MCPA. Specifically, the Complaint cites § 13-301(1) of the MCPA, a provision of the statute that defines "unfair or deceptive trade practices." However, any attempt by Mian to state a cause of action under the MCPA is unsuccessful for several reasons.

First, the MCPA specifically prohibits those practices that deceive or mislead "consumers." The MCPA defines a consumer as "an actual or prospective purchaser, lessee, or

recipient of consumer goods, consumer services, consumer realty, or consumer credit." Md. Code Ann., Com. Law § 13-101(c)(1). It further defines "consumer" goods, services, realty, and credit, as those that "are primarily for personal, household, family, or agricultural purposes." *Id.* § 13-101(d)(1). In this case, the Complaint alleges that Mian was a "wholesale used car dealer" doing business with Manheim to sell his cars through Manheim's auction services. Compl. at 1-2. Thus, Mian does not, and cannot allege that the services were for personal, household, family or agricultural purposes. Because Mian is not a "consumer" under the MCPA, his claim will be dismissed with prejudice.

Furthermore, even if Mian were a "consumer" under the statute, his claim would be dismissed because he fails sufficiently to state a claim. In order to state a claim under the MCPA, a plaintiff must adequately plead that (1) the defendant engaged in an unfair or deceptive practice or misrepresentation, (2) the plaintiff relied upon the representation, and (3) doing so caused the plaintiff actual injury. *Currie v. Wells Fargo Bank*, 950 F. Supp. 2d 788, 796 (D. Md. 2013) (citation omitted). The MCPA defines an "unfair or deceptive trade practice" as a "false, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers." Md. Code Ann., Com. Law § 13-301(1). Because an MCPA claim involves fraud, it is subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b). *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013). Under Rule 9(b), a plaintiff must plead with particularity the circumstances of the fraud, including "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783-84 (4th Cir. 1999) (citations omitted).

In this case, Mian takes issue with Manheim's practice of assigning earlier lane placements on its lot to those sellers with higher-volume inventories, but he does not allege that Manheim ever made any false representations regarding its practices, or that Manheim otherwise misled or deceived Mian in any way. Instead, Mian believes that Manheim's assignment practice was unfair to those smaller dealers with fewer units, like himself, and that it should therefore fall within the ambit of the MCPA's prohibition against unfair or deceptive trade practices. As explained above, however, to state an MCPA claim, a plaintiff must allege there was a false or misleading representation of some kind, which had the effect of *deceiving* the plaintiff. Mian's allegations establish that, while he disagreed with Manheim's policies as a matter of principle, he was never deceived by any representations Manheim made, and that, to the contrary, he was fully aware of their practices. Such allegations are insufficient to state a claim under the MCPA. Mian's claim is therefore dismissed.

### D. The Maryland Antitrust Act

Finally, Mian alleges that Manheim's practices violate the MAA. The Complaint does not cite to a specific provision of the MAA, but in his Opposition, Mian argues that Manheim was in violation of Md. Code Ann., Com. Law §§ 11-204(a)(3), 11-204(a)(4), and 11-204(a)(5). Mian fails to state a claim under any of these provisions.

Subsections 11-204(a)(3) and 11-204(a)(4) do not apply in this case because they deal with prohibited price discrimination. Subsection 11-204(a)(3) would prohibit Manheim from directly or indirectly discriminating in price among its dealers, if the effects of the discrimination may substantially lessen competition, tend to create a monopoly, or injure, destroy, or prevent competition. Md. Code Ann., Com. Law § 11-204(a)(3)(i)–(iii). Subsection 11-204(a)(4) would prohibit Manheim from making payments or any other compensation to a dealer, unless the

payment "is available on proportionally equal terms to all other [dealers] competing in the distribution of the service or commodity." *Id.* § 11-204(a)(4). Here, Mian does not allege anywhere in the Complaint that Manheim charged him a discriminatory price, or that Manheim made any payments to dealers on an unequal basis. Because there are no factual allegations in the Complaint from which it can be inferred that Manheim was engaged in price discrimination, any claim under § 11-204(a)(3) or § 11-204(a)(4) is dismissed.

As for § 11-204(a)(5), that subsection provides that a person may not:

> Discriminate in favor of one purchaser against another purchaser of a commodity bought for resale . . . by contracting to furnish, furnishing, or contributing to the furnishing of any service or facility connected with the processing, handling, sale, or offering for sale of the commodity on terms not accorded to all purchasers on proportionally equal terms.

*Id.* § 11-204(a)(5).

Mian cannot allege a plausible claim under this provision because it bars discrimination relating to the provision of services or facilities "in favor of one purchaser against another purchaser of a commodity bought for resale." *Id.* "Commodity" is defined as "goods, wares, merchandise, machinery, supplies, or any other articles in trade or commerce." *Id.* § 11-201(c). This provision is designed to address the situation where a wholesaler or retailer purchases goods from a supplier to then be resold to wholesale or retail customers, but is subjected to discrimination by the supplier in the provision of advertising, promotional, or merchandising services or facilities. *See Hinkleman v. Shell Oil Co.*, 962 F.2d 372, 380 (4th Cir. 1992); *Ludwig v. Am. Greetings Corp.*, 264 F.2d 286, 288-89 (6th Cir. 1959) (finding a violation of § 2(e) of the Robinson-Patman Act, a parallel provision of federal antitrust law, where a greeting card

supplier unfairly provided free greeting card displays to certain retailers as an improper inducement to disadvantage a wholesaler).[2]

Although a used car would qualify as a "commodity," Mid-Atlantic and the other dealers doing business with Manheim were not purchasing cars from Manheim for resale, nor was Manheim purchasing cars from the dealers. Rather, as Mian alleges, Manheim is engaged in the business of providing a *service* to car dealers such as Mid-Atlantic, in that it "provides auction services to wholesale and retail dealers registered with them . . . charging commission on sold cars and no-sale charges on unsold cars." Compl. ¶ 3. Significantly, although the language of § 11-204(a)(3) prohibits price discrimination "among purchasers of commodities or services," and § 11-204(a)(4) prohibits discriminatory payments made in connection with the sale of "any service or commodity," the language of § 11-204(a)(5) prohibits discrimination against a purchaser of a "commodity bought for resale" only, and notably does not cover purchasers of *services*. Md. Code Ann., Com. Law § 11-204(a)(3)-(5). Because neither Mian nor Mid-Atlantic was a "purchaser of a commodity," much less a "purchaser of a commodity bought for resale," in the context of their interactions with Manheim, there can be no cause of action under § 11-204(a)(5). *See Foremost Pro Color, Inc. v. Eastman Kodak Co.*, 703 F.2d 534, 546-47 (9th Cir. 1983) (dismissing a claim under § 2(e) of the Robinson-Patman Act because the plaintiff's allegation that it had been subject to discrimination in relation to photofinishing equipment it had purchased for use in its operations, rather than for resale to customers, failed sufficiently to assert that it was a "purchaser of a commodity bought for resale" as required to state a claim). Because

---

[2] In analyzing state claims under § 11-204(a)(5), the United States Court of Appeals for the Fourth Circuit has looked to cases construing § 2(e) of the Robinson-Patman Act, codified as 15 U.S.C. § 13(e), because the statutory language in the two provisions is nearly identical. *See Hinkleman*, 962 F.2d at 379.

Mian has not and cannot state a plausible claim under § 11-204(a)(5) or any of the other cited provisions of the MAA, his MAA claim is dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, the Motion to Strike the Motion to Dismiss is DENIED, and the Motion to Dismiss is GRANTED. The Complaint shall be dismissed with prejudice. A separate Order follows.

Date: May 22, 2015

THEODORE D. CHUANG
United States District Judge